Curtis SUTTON et ux., Appellants,

v.

GROGAN SUPPLY COMPANY, LUMBER DIVISION, et al., Appellees.

No. 8079.

Court of Civil Appeals of Texas, Texarkana.

Feb. 29, 1972.

Guy Jones and Lynn Cooksey, Texarkana, for appellants.

Tom J. Mays, Carney & Mays, Atlanta, for appellees.

RAY, Justice.

Curtis Sutton and wife, Donna Sutton (Plaintiffs) Appellants, brought suit against Grogan Supply· Company, Lumber Division; C. M. Grogan, Trustee, and Charles E. Harrist (Defendants) Appellees, seeking to cancel a second lien note and the deed of trust and vendor's lien securing it. The instruments sought to be canceled (introduced into evidence without limitation as joint exhibits) were dated August 26, 1964, and suit was brought on June 12, 1969, more than four years after the signing of the instruments. Appellants sought to set aside the second lien on the basis that it and the note in the sum of $1,950.00 were procured by fraud and without consideration. Appellants also sued to have the cloud removed from their title and for exemplary damages against Charles E. Harrist who conveyed the house and lot to Appellants. The case was tried to a jury and all special issues were answered in favor of the Suttons with the exception of Special Issue No. 14, in which the jury found that the Suttons had failed to exercise reasonable diligence to discover the legal effect of the vendor's lien note and deed of trust which they signed on August 26, 1964. The Suttons timely filed their motion for judgment, based upon the findings of the jury that no consideration was paid by Appellee Grogan Supply for the note and deed of trust, and for the further reason that the jury had found that the second lien and note had been procured by fraud. In the same motion, Appellants moved the court to disregard the jury's answer to Special Issue No. 14 and enter judgment upon the answers to Special Issues Nos. 1 through 13 (Special Issue No. 2, concerning Mrs. Sutton's separate acknowledgment, had been withdrawn by Appellants and the jury did not answer it).

The Appellants submitted to the court affidavits from each of the members of the jury that they had intended to answer Special Issue No. 14 in favor of the Suttons. However, these jurors were not subpoenaed to testify at the hearing on the motion for new trial, nor were they subpoenaed to testify for Appellants at the time the motion for judgment was under consideration by the trial court. All the Appellees (Defendants) joined in a motion for judgment in their favor, based upon the fact that the jury had answered Special Issue No. 14 favorably to them, finding that the Suttons failed to exercise reasonable diligence to discover the legal effect of the note and deed of trust which they had signed. The Appellees had entered a defensive plea of the four-year statute of limitations and urged the trial court to enter judgment for them because Appellants' cause of action was barred after four years when the Suttons failed to exercise reasonable diligence to discover the legal effect of the note and deed of trust.

The record reflects that the trial court granted Appellees' (Defendants) motion for judgment, and the Suttons timely filed their motion for new trial. The motion for new trial was set for hearing and was overruled by the trial court. Appellants timely filed their notice of appeal and appeal bond and now submit five points of error for consideration by this court.

The facts surrounding the land transaction in question are that Charles E. Harrist and wife, Geraldine, owned a house and lot in Texarkana, Texas, which they wanted to sell. The testimony reflects that Appellee Harrist approached the parents of Appellant Curtis Sutton (Harrist and Sutton's parents having once been neighbors), and inquired if they knew of anyone who would like to assume a loan on a small home in Bowie County, Texas, and pick up

the payments on the house and lot with no down payment, closing costs, or other fees. Appellants contended that Harrist represented to them that they would merely assume the indebtedness against the house and lot with Surrey Investment Company, and that they could move in and commence making monthly payments with no down payment or other costs. Subsequently, Harrist informed the Suttons that all papers were ready to be signed and, upon presentation of the papers to Appellants, they signed all that were placed before them, without examining the contents of the instruments.

Appellants moved into the house and started making the monthly payments to Surrey Investment. Four years and eight months later the Suttons received a letter from Appellee, Grogan Supply Company, Lumber Division, informing them their note to Grogan Supply in the sum of $2,583.77, being the principal and accrued interest, would be payable on or before the 26th day of August, 1969. Upon receipt of the letter, Appellants began to inquire about the note and learned that they had signed a note and deed of trust directly to Grogan Supply Company in the sum of $1,950.00 on August 26, 1964, bearing interest at the rate of 6½% per annum with no payment by way of principal and interest to be made for a period of five years. Appellants testified that they did not have any dealings with Appellee Grogan Supply in relation to the purchase of the house and lot. The Suttons' testimony is corroborated by that of Mr. Parker, an employee of Appellee Grogan Supply. The testimony established that Appellee Harrist owed Grogan Supply $1,950.00, and had the Suttons sign a vendor's lien note in that amount, payable directly to Grogan Supply, and secured it by a second lien deed of trust and a vendor's lien in the deed executed by the Harrists to the Suttons. No contact was ever had between Grogan Supply and the Suttons until the Suttons received the letter stating that the note would soon be due.

Appellants' first Point of Error is as follows:

"The court erred in granting judgment for Appellees, the effect of which is to allow Appellees to enforce the provisions of a Deed of Trust upon Appellants' home, when the jury had found that same was not supported by consideration."

The jury found in answer to Special Issue No. 1 that Appellee Grogan Supply had not paid a consideration to the Suttons to execute the note and deed of trust. The jury also found that Harrist had represented to the Suttons that they were merely assuming the balance of an indebtedness to Surrey Investment Company, and that Harrist had represented that the amount that the Suttons would be paying for the land would be the sum of $9,800.00. Further, the jury concluded that the Suttons did not have knowledge that they were executing a note and deed of trust in favor of Appellee Grogan Supply, nor were they in possession of facts or information which would have put an ordinarily prudent person upon inquiry, which if diligently pursued would have led to the discovery prior to August 26, 1968, that they had signed such note and deed of trust.

The evidence shows that Appellee Grogan Supply accepted the note and deed of trust in liquidation of a pre-existing debt owed by Appellee Harrist to Appellee Grogan Supply, and that the Suttons were not a party in any manner to the transaction which established the debt from Harrist to Grogan Supply.

Appellants' Point of Error No. 1 is without merit. The facts clearly show that the Suttons got all of the consideration they bargained for, that being the house and lot. Appellant Charles Sutton testified that he thought his house was worth $14,000.00 at the time of trial, which is considerably more than he assumed and agreed to pay, even if the Surrey Investment Company balance of $9,800.00 is add-

ed to the Grogan Supply Company note of $1,950.00. It is obvious that the consideration which moved to the Suttons was the house and lot. They did not have to receive a consideration directly from Grogan Supply Company. As the testimony of Appellee Harrist and Appellee Grogan's employee, Mr. Parker, clearly shows, Harrist owed Grogan Supply for materials used in a house built for a Mr. Sims in Atlanta. Mr. Sims had traded and conveyed to Harrist the house and lot which Harrist later sold to Appellants. Because Harrist still owed Grogan $1,950.00 for materials used in the Sims house, Harrist prevailed upon Grogan to accept the second lien and the note it secured as payment for the debt that Harrist owed Grogan Supply. It is not necessary that a consideration be paid to the grantor in a deed (such as Harrist was here), but it may be paid to a third person, with the grantor's knowledge and consent. Furthermore, a third person for whose benefit the contract is made may enforce it, though no consideration passes from him (such as Grogan Supply here) to the promisor (such as the Suttons in this case). 13 Tex.Jur.2d, Sec. 44, p. 176.

■ If there were a mistake of fact as to the amount to be paid for the house by the Suttons, their remedy was by way of recision or reformation within four years of the date of the transaction. Those remedies were already barred by the four-year statute of limitation, Art. 5529, Tex.Rev. Civ.Stats. prior to the commencement of the action in this case. Gaither v. Gaither, 234 S.W.2d 135 (Tex.Civ.App. Texarkana 1950, N.R.E.); Redburn v. Shield, 338 S. W.2d 323 (Tex.Civ.App. San Antonio, 1960, Err. Dism'd). Appellants' First Point of Error is overruled.

■ The Second Point of Error urged by Appellants is as follows:

"The court erred in granting judgment for Defendants after the jury found that the note and deed of trust in question was obtained by fraud."

Appellants' Second Point of Error must be overruled because the four-year statute of limitation, Art. 5529, Tex.Rev.Civ.Stats., bars Appellants' attempt to cancel the note and deed of trust to Grogan Supply on the basis that the execution of these instruments was procured by fraud. Appellants contended that they did not read the instruments which they signed and did not know that the note and deed of trust involved a promise to pay Grogan Supply $1,950.00. In Indemnity Ins. Co. of North America v. W. L. Macatee & Sons, 129 Tex. 166, 101 S.W.2d 553 (Tex.Comm. App.1937), the court approved the language of Justice Hunt in Upton v. Tribilcock, 91 U.S. 45, 50, 23 L.Ed. 203, 205, as follows:

"It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission."

In Thigpen v. Locke, 363 S.W.2d 247 (Tex.Sup.1962) the court stated:

"As to the contention that there was some evidence on the second theory of actual fraud, petitioner has interposed the rule that a party to an arms-length transaction is charged with the obligation of reading what he signs and, failing that, may not thereafter, without a showing of trickery or artifice, avoid the instrument on the ground that he did not know what he was signing. Indemnity Insurance Company of North America v. W. L. Macatee & Sons, 129 Tex. 166, 101 S.W.2d 553. This rule is but a narrower application of the principle that the party claiming fraud has a duty to use reasonable diligence in protecting his own affairs. 'In an arm's-length transaction the defrauded party must exercise

ordinary care for the protection of his own interests and is charged with knowledge of all facts which would have been discovered by a reasonably prudent person similarly situated. And a failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party.' Courseview Inc. v. Phillips Petroleum Co., 158 Tex. 397, 312 S.W.2d 197."

In La Neve v. Hinkson, 271 S.W.2d 467 (Tex.Civ.App. Eastland 1954, err. ref'd, n. r. e.), the court stated:

"As a general proposition, one who executes an instrument is charged with knowledge of its contents and limitations begin to run from the time of its execution and one who acquires title to land by a deed is charged with notice of all instruments included in his chain of title, and the statute of limitation begins to run from the time he acquired title. Kennedy v. Brown, Tex.Civ.App., 113 S.W.2d 1018; Kahanek v. Kahanek, Tex.Civ.App., 192 S.W.2d 174."

The court further states:

"We take it to be unquestioned that where there is an allegation of fraud or mistake and the statute of limitation has been plead, the one making such allegation must prove that due diligence was exercised to detect same, to avoid the running of the statute."

■ The Appellants rely heavily upon City of Houston v. Howe and Wise, 373 S.W.2d 781 (Tex.Civ.App. Houston 1963, writ ref'd, n. r. e.) and National Automobile and Casualty Insurance Company v. Allco Insurance Agency, 403 S.W.2d 174 (Tex.Civ.App. Austin 1966, no writ) for the proposition that a party to whom representations are made has a right to rely upon such representations, and is not called on to make an investigation to ascertain their truth or falsity. There is, however, a limitation upon this rule, which is that the person who claims he has been defrauded must not be in possession of information showing the utter falsity of the alleged representation. Wertman v. Young, 235 S.W. 559 (Tex.Comm.App.1921). In Bradford v. Thompson, 460 S.W.2d 932 (Tex.Civ.App. Tyler 1970); 470 S.W.2d 633 (Tex.Sup.1971), the Tyler Court of Civil Appeals had before it a very similar case to the one now under consideration, in that the deed conveying property called for the assumption of two mortgages rather than one, and the Grantees there contended that they did not owe the obligation under the second lien. The court stated:

"The general rule is that the grantee in a deed accepted by him is a party to the deed and though he does not sign it, he is concluded by the recitals in the deed. Greene et al. v. White et al., 137 Tex. 361, 153 S.W.2d 575 (Tex.Sup., 1941). Moreover, a party claiming through a deed is generally held to have notice of all facts recited therein or fairly disclosed by the instrument whether he has actually seen or read it, or has any knowledge of its contents. 59 Tex.Jur. 2d sec. 754, pp. 277–280; Sunderman v. Roberts, 213 S.W.2d 705 (Tex.Civ.App., San Antonio, 1948, n. w. h.); Tuggle v. Cooke, 277 S.W.2d 729 (Tex.Civ.App., Ft. Worth, 1955, err. ref., n. r. e.). Appellants give no excuse for not having read the deed. It does not appear in the record that they failed to read the deed, or have it read or explained to them, because of any act or conduct on the part of any of the appellees or their agents. After the deed had been delivered to W. B. Post for delivery to appellants, they appeared at his office and paid the down payment on the property. Therefore, we think it must be said that it appears as a matter of law that notwithstanding the fact that they did not read the deed, appellants were nevertheless charged with knowledge of the contents thereof at the time that they accepted it. National Equitable Soc. of Belton v.

Carpenter, 184 S.W. 585 (Tex.Civ.App., Texarkana, 1916)."

In Sherman v. Sipper, 137 Tex. 85, 152 S.W.2d 319 (Tex.Sup.1941), the Supreme Court held that an action to cancel deeds because of false and fraudulent representations was barred by the four-year statute of limitation as a matter of law where the deed sought to be canceled had been placed of record and more than four years had elapsed before suit was instituted to cancel the deed. The court said that before Sipper could recover he must show facts excusing his failure to discover the defect in the title to the property, and demonstrate that he had used reasonable diligence to discover the defect and had been unable to do so. The court went on to say,

"Furthermore, it is undisputed that the records were open to him for inspection, and there was nothing to prevent him or his attorney from discovering the misrepresentations made by Sherman; and by the exercise of reasonable diligence he or his attorney could have discovered that the minerals had been reserved by the Leon & H. Blum Land Company in the land in controversy. Therefore the Sippers are charged in law with constructive notice of the actual knowledge they would have acquired if they had examined the records."

Our analysis of the decisions of the courts of this state bring us to the conclusion that the Suttons were charged with notice, as a matter of law, of the contents of the instruments which they signed but did not read. They were further charged as a matter of law with constructive notice of the contents of the deed conveying the house and lot to them and the contents of the deed of trust, as soon as such instruments were recorded on September 1, 1964. There was no showing by the Suttons that they were in any manner prevented from reading the instruments which they signed and the deed conveying the property to them, other than the fact that they trusted Mr. Harrist. In view of an arms-length

transaction, such as this, and the Suttons' failure to show a fiduciary relationship between the parties, the fact that they trusted Mr. Harrist is not sufficient grounds to excuse them from reading the instruments they signed, nor will it defeat the statute of limitations. We hold that the four-year statute of limitations began to run from the date of the execution of the instruments, because it was at this time that the Suttons were charged in law with exercising diligence in reading the instruments they were signing. Any oral misrepresentations that Mr. Harrist may have made prior to the signing of the instruments could have been detected by the reading of the deed, deed of trust and note which Appellants state they had access to at the time of the consummation of the land transaction. There is no evidence in the record of active trickery or an attempt to hide the contents of the instruments that the Suttons were signing or receiving. Any fraud that may have been practiced upon the Suttons was barred by the four-year statute of limitations at the time the Suttons filed their suit.

Appellants' Point of Error No. 2 is overruled.

■ In Point of Error No. 3 Appellants state that the court erred in granting judgment for the Defendants because Special Issue No. 14 is not an ultimate issue, and is in nowise determinative or controlling of any material issue involved in this case, and same is in hopeless and irrefutable conflict with the answer to Special Issues Nos. 12 and 13.

Special Issue No. 14 contained the following language:

"Do you find from a preponderance of the evidence that Curtis W. Sutton and wife Donna Sutton, failed to exercise reasonable diligence to discover the legal effect of the vendor's lien note and deed of trust which they signed on or about August 26, 1964?"

The jury answered:

"They did fail to exercise reasonable diligence."

This issue need not have been submitted by the court in view of the holding in Sherman v. Sipper, supra, and La Neve v. Hinkson, supra, since it has been held as a matter of law that the Suttons failed to exercise reasonable diligence when they did not read the instruments they signed and did not show a legal excuse for failing to read the instruments, nor in failing to check the land records to discover the defects in their title and the mistaken consideration. Appellants' Point of Error No. 3 is overruled.

Appellants' Point of Error No. 4 complains that the trial court erred in refusing to disregard the answer to Special Issue No. 14 and in entering judgment for Appellants upon the remainder of the verdict. In view of what we have already said, Appellants' Point of Error No. 4 is overruled.

In Point of Error No. 5, Appellants state,

"The court erred in granting judgment for Appellees as same is so against the overwhelming weight and preponderance of the evidence, and jury findings, as to be manifestly unjust and clearly wrong."

From what we have previously declared, Appellants' cause of action was barred as a matter of law by the four-year statute of limitations, and the trial court had the duty to disregard the findings of the jury and enter judgment for the Appellees (Defendants).

This court having determined there was no failure of consideration, and that Appellants' cause of action was barred by the four-year statute of limitations at the time Appellants instituted suit, we have concluded that the judgment entered by the trial court should be affirmed.

The judgment of the trial court is affirmed.